Dr. Peake, Judge Graber and I are delighted to be sitting once again with Judge Selma from the Central District of California, Santa Ana. Thanks for helping us out again. You're welcome. Counsel ready? Appellant may argue. If you lost, you're up first. May it please the Court. My name is Scott Rafferty. I represent Mr. Preminger and the Santa Clara County Democratic Central Committee. My client, Mr. Preminger, is here today. I want to start off by thanking the Court and also opposing counsel for the many accommodations that you've made in light of my father's injury and death. The VA currently has no rule and no effective written policy that governs voter registration drives or any form of private political conversations. Perhaps they thought they did, but the Federal Circuit has authoritatively construed the rule to apply only to demonstrations that maintain decency on a VA cemetery or campus, and voter drives do not do that. Private conversations do not do that. The Court should decide this case on narrow grounds, but these narrow grounds justify giving Mr. Preminger complete injunctive relief. Application of the rule or unpublished policies or directives, staff instructions, should be enjoined and to the extent that they restrict private political conversations. And the VA should be enjoined from restricting canvassing and leafleting that's designed to register voters. There are two parallel cases, parallel basis for these relief. First of all, the case against application of the regulation. As this Court held previously, that application must be both reasonable and non-viewpoint discriminatory. And secondly, this Court has or the district court had plenary jurisdiction over policies and staff instructions, rule interpretations, that the VA announced but did not necessarily enforce. This case is very much like Bella Lewitsky Dance Foundation v. Frundmeier, which is the case that required the ultimately non-viewpoint interpretation of the law. And it led to the amendment of the NEA's original attempts to restrict obscene or homoerotic artwork. That decision did not strike any of the legislation itself. It dealt exclusively with the guidelines and the procedures. And the purpose of this legislation, as shown by the administrative record behind it, was to constrain the discretion of facility heads. The director, sorry, the Veterans Administrator required that procedural guidelines be published concurrently with the rule. There were already guidelines on disturbances. As near as we can tell, they were never revised. There's been an extensive search by the archives for the revision to the preexisting procedures. They are not publicly available. There's no fair notice to the public as to what happens, how a decision can be reviewed internally by the agency, how you find out why you're being. Counsel, I just want to stop you to ask you about a kind of an odd procedural posture for this case. There was a full trial, three days or so. And yet at the end of all that, the district court determined that the plaintiff didn't have standing. And in view of the fact that there was a complete trial, I take it that you're assuming that if we disagree on the standing question, we can just go ahead and reach the merits without a remand, because everything is there. Is that your position? Well, I think our position is that from our standpoint, we are essentially appealing from the denial of summary judgment. The we believe we were entitled to summary judgment for two reasons. The first was that Mr. Preminger was not representing the Democratic Party and the simple act of voter registration, which he was prepared to do it in any way they directed. He was prepared not to discuss policies, not to identify parties, simply to do what the deputy registrar did. The deputy registrar is required to do under California state law, which is assist someone in filling out the form, make sure they have it, and allow them to choose the party of their choice. So that was the law of the case. That was left open by this Court. And your opinion observed that the assumption that appellate counsel made was limited to the purposes of the appeal. The trial judge both before and after that decision said that voter registration itself was not a partisan act, no matter who did it. And that was one of the bases for summary judgment. So is the answer to Judge Graber's question yes or no? I believe you can reach the merits in our favor. That's an equivocal answer. Can we reach the merits, period, whether you win or lose? I guess my question really went to whether the trial was a complete trial or whether there was anything left out on account of the fact that the district court went off on a procedural decision. Is there a complete record as far as you were concerned at the time? Is there anything that you would have done differently after the Court ruled on standing that you didn't do before the Court ruled on standing? Yes, absolutely. The Court in its pretrial orders, both of the pretrial conferences and in the actual order, said that the only issue for trial was is there a written policy and was premeditated and the measure excluded according to such a policy. So if we disproved the existence or established the nonexistence of a written policy, that was the only issue before the Court. This is why, I mean, he said repeatedly that the issue of damages was off the table. We would have had economic experts come in and shown how many volunteer hours it takes to address 400, in Santa Clara County, 400 unregistered voters. And so the issue of injury. Your answer strikes me as unusual, because you started by saying you can decide the merits if you decide in my favor, but I didn't get to put on evidence to show you how to decide in my favor, which doesn't kind of follow to me. But if the VA's position on the merits is correct, as a technical matter, would we be entitled to affirm on a different ground, even if we agree with you on standing? I don't believe so. Why? Because the VA was denied some re-judgment, and they are, they did not cross-appeal that. You don't have to cross-appeal to get an affirmance on a different ground, if it was raised below. Well, but the principle of jurisdiction and why this case is so unusual is that you normally decide the jurisdiction, all issues, before you reach the merits. And here there were 15 conclusions of law about the enforcement and interpretation of this rule before you reached the merits. Well, that's why I asked the question, because it looked like there was a trial and then a decision on jurisdiction after the trial, which is what I agree with you, that's very unusual. Well, that's why I'm asking the question, because if there had been a 10-minute hearing and the court said no standing and then we disagreed, the court would have to start over, presumably. But I'm asking about if we, just for the sake of the question, if we happen to agree with you on standing, then are we fully capable of reaching the merits with respect to the validity of the policy or not? And I think the answer is one-sided. I'd like to reserve four minutes for my rebuttal. And I think the answer is one-sided. I think you can in our case, because we're essentially appealing from the failure to grant summary judgment in our favor. And in their case, I think, you know, we were prejudiced, because had there been a finding of standing at the onset or at least before dispositive motions or in the dispositive motions, we would have added plaintiffs. I mean, we were asked to bring this lawsuit, but the patient ---- That's a standing question, though. Yes. How are you prejudiced on the merits if they conclude that standing, in fact, is there? If standing is there, I think you can reach the merits in my favor. I think you should remand otherwise and see if the judge ---- I mean, the thought process is you're supposed to decide the jurisdictional issues first and then decide the merits. And here the judge kind of made one determination and took a preliminary view of the merits. I think you should go back and tell the judge, are you really sure of those findings of fact and conclusions of law? That sounds like a remand. Yes. I think you should reverse the remand. So I understand your position correctly. You had standing. If we think the district court was wrong in saying that your client didn't have standing, we can rule in your favor, but we can't rule in favor of the department, the secretary. Yes. Because what we know that the court did not know when he made his tentative decision is what came out of the Federal Circuit. The Federal Circuit says that the rule can't be applied here because it prohibits content-based censorship, not just viewpoint-based discrimination, and because it prohibits discrimination based on party affiliation. You want to stay four minutes? Yes. Thank you. Thank you for your argument, counsel. You have some rebuttal time. We'll hear from the secretary at this time. May it please the Court. Good afternoon. My name is Owen Mardikin, and I represent the appellees. I'd like to begin with the Court's questions to the appellant regarding standing and the ultimate resolution of this case. My answer to that question is yes. Yes, because if the Court finds there is no standing, the record is also complete enough for the Court to find no First Amendment violation based on the framework that this Court set out when it first heard this case. The question is yes. The answer to that question is, frankly, yes, on the plaintiff's side as well, because the Court could find the plaintiff's half standing, and because this is one of those peculiar cases where the merits are intertwined with standing, the plaintiff has to win to show standing. So the record is really complete in either way. I think that, respectfully, the appellant's answer, no to that question, is incorrect. The rationale was apparently that we were denied summary judgment, and that somehow limited the record and limited the scope of the trial. The denial of summary judgment was only as to the First Amendment as applies to the plaintiffs. The Court's question was, did the VA consistently apply a policy across the board, such that you could say it was viewpoint neutral as opposed to potentially discriminatory? That was, and it's at page 38 of the excerpt of the record where the Court discusses its summary judgment ruling in that regard, and the Court says flat out, that's the issue to be tried. Now, there was a secondary issue which was qualified immunity, but before trial, the plaintiffs dismissed the personal capacity defendant. So really the only issue remaining after summary judgment was the core First Amendment issue that was tried. Could the department prohibit the director of the Department of Elections for Santa Clara County, if there is such a person, from coming to a VA medical center and offering to patients and folks there, if they wanted, without interruption of medical services or daily business, the opportunity to be registered as a voter? I'm assuming that would be a nonpartisan registration. I'm assuming this is the person who's the elected or appointed, if you will, depending on what they do in Santa Clara County. The appointed official director of the Department of Elections calls the director of the VA hospital in the city of Santa Clara and says, I'd like, at a time convenient and not to interrupt what's going on at the hospital, to offer the patients and the staff there, if they wish, the opportunity to become registered voters, if they're not already. Could the VA say no? I would say, based on this application of the rule, I would say they would not say no. I mean, I'm not certain if that position that you're discussing could be seen as a Well, that sort of leads to my next question. I assume that Santa Clara County has a board of supervisors. Yes. And that they're elected in partisan elections. I don't know if those are partisan elections. And, well, just humor me with the progression of the question, that the board that runs Santa Clara County is an odd-numbered board that has three, five, seven members, and that one political party has more votes than the other political party. Okay? Okay. And the majority of the board representing one political party appoints the director of elections. Are you with me so far? I am. Okay. And they're not going to appoint somebody that's of the opposite political party. That's the American system. Right. Okay? And that person wants to come register voters. Can VA say no? You can't come because we know your bosses are Democrats, Republicans, Libertarians, whatever they happen to be. And we know you are, too. And we know that there's not a nonpartisan bone in your body, so you can't come in here. I would say if they – if the question is if they can't say no, I would say I would disagree with that. I would say no. I think they could say no because I think the question they would ask would be a little bit different. It would be what the director stated in her testimony at trial, which is, is this an activity that could be seen as harming the VA's appearance of political neutrality? How could mere registration of voters be seen as harming neutrality when the person registering could sign up for any political party and vote in any possible way in any possible election? Well, as the Office of Special Counsel noted when it was interpreting the Hatch Act and reached that conclusion, consistent with the VA's policy, there's a difficult question of perception. Because in this case, for example, the Democratic Party was clearly showing up with the regalia and the intent to let the voters know that they were there on behalf of the Democratic Party, and with a published goal of registering Democrats. So you have an organization whose goal is not necessarily to register voters or to educate voters in a neutral way, like the League of Women Voters, for example, but a goal which has a specific agenda to register members of that political party. Did Mr. Preminger offer to come without political paraphernalia? Well, I don't think the record says anything about that, Your Honor. Well, let's assume he didn't. Let's assume he was willing to come to the hospital, no indication of anything other than perhaps a nameplate saying, hi, I'm Mr. Preminger. Okay? I would say no. Why? Because whatever clothes he's wearing, whatever badge he's wearing, he's still representing the Democratic Party. I take it that under California law, as is true in most states, that whether you are a Republican, a Democrat, or a Whig, if you're a deputy registrar, you cannot refuse to register someone because of the political party affiliation they choose. Isn't that correct? I'm sure that's correct. So he could not walk up to a patient and say, I'm here to register Democrats. I don't want to register any Republicans. He couldn't do that as a matter of law. Legally, he couldn't, but that's a different standard applied to what he can and can't do versus the VA's interest, because the VA has different interests. Besides the minimum requirements of state law, the VA has interests in protecting an environment of political neutrality for its patients. The VA has an interest in making sure it doesn't run afoul of the Hatch Act. The VA has an interest in prohibiting the disruption that might occur if it had to invite anyone who claimed, regardless of their party position, that they were going to pretend to be nonpartisan for a day. So the VA's interest was to protect the environment. In acting which way, Your Honor? That they act in a partisan way. Partisan way. In other words, refusing to register Republicans or Libertarians or Independents, only being willing to register Democrats. What evidence was there for that? All right. The evidence was that Mr. Preminger and two other individuals showed up, one of them wearing a pin supporting a particular Democratic candidate for president at the time. The other one with a placard on the car saying Impeach Bush, so clearly opposed to the other political party. They introduced themselves as members of the Democratic Party. In addition, there is the charter of the Democratic Party, which obviously wasn't available to the person who was there at the time, but which does state that what the Democratic Party's, the local Democratic Party's stated purpose is to register Democrats and to get Democratic candidates elected. So that's not obviously unsurprising, but it is what would put anyone on guard about having them come in, even to pretend to do a nonpartisan registration drive. The VA can't. I don't know why you say pretend. You may still be right, but it seems to me that partisan people can do nonpartisan things. I mean, you could have a soup kitchen that all has, you know, we love Bush on their lapels, but they're still doing a nonpartisan act. It's not pretending. I agree, Your Honor, but I think in your example, there's a distinction between the activity, having a soup kitchen, which has no particular political connotation and the person's political views, whereas here you have not just a person with partisan political views, but you have a very, a purely political activity. So a political activity that's not. Well, the question is whether it's a viewpoint, neutral activity, when the sole permitted activity is registration. At my daughter's high school, they're given when they turn 17 and a half, and it's legal for them, they get registration cards to vote, you know, to register to vote. And I guess I would have a hard time seeing that as the school supporting one political party or another as distinct from saying, hey, it's good to get involved in politics in general. So why is this particular activity partisan, or is it the sort of history of the individual that gives the appearance to the neutral observers? Well, I think there are a couple of things that would make it a little bit different from that example. One is the fact that this is a federal facility. It's governed by the Hatch Act, and so the people who work there are federal employees, and they are bound by law to maintain an atmosphere of political neutrality. So if there is even a potential or a risk of that atmosphere of political neutrality being compromised, they would be much more concerned about that than perhaps you would be in a school where it might be great to have a marketplace of ideas. Maybe you want to not just have a party come in, maybe you want to have all the parties come in and all the kids be able to talk to them. Here we have a very different environment. So that would be the first reason. And then the second, which I was sort of segueing into, is that you have a very strong interest in patient care and in maintaining the relationship between the patients and their direct caregivers, but their trust in the organization as well. So in your opinion, would this be a different case if, when Mr. Preminger and his associate came into the building, were told, look, we have no objection to you registering people to vote, as long as it's done in an entirely nonpartisan way. In other words, you can't wear any political paraphernalia. And, of course, we would give the same opportunity to people of a different political persuasion. You cannot talk to them about, I think Mr. Preminger was a candidate for office, wasn't he, at the time of the earlier case? He was with someone who was a candidate. Okay. But, in other words, told them they had to do it in a completely nonpartisan way. And, of course, you can't interfere with our primary purpose here, which is the provision of medical care to the nation's veterans. Are you still saying that they could refuse at that point? I think they could because I think it implicates a different concern, a third concern, which is if they let a political party in, even if they tell the people and they swear to each other, we're going to not tell anyone we're from this political party, the fact is representatives of that political party are coming in with the permission of federal employees. That means that they cannot preclude at that point anyone else from any other political party who wants to come in. And it's a different environment than a school. It puts them in the position of having to devote staff and resources away from patient care to dealing with multiple people. So the same rule would apply if a person in exactly Mr. Preminger's position, but who was a Republican, same rule would apply? Absolutely. And the same rule would apply if Mr. Preminger had come, who was the chairman of the Central Democratic Committee in Santa Clara County, if he came in with his Republican counterpart and said, we're here, we don't want to interfere with anything you're doing, but we would like to register voters, what do you say? I think it would. I think it would be a problem. And I think that while you're curing one problem, you're perhaps creating others. There's an overwhelming or there's an overarching interest the VA has in patient care. And that is the root of any restrictions that they have on any activities that might be disruptive. Political activities are a subset of that. If they start to allow in people, if they try to balance views, they're allowing in more people. As some of these nurses and doctors testified at trial, they're concerned about opening the floodgates because once you let in someone else, there's a perception that you're not being neutral unless you let in anyone else. There are more than two parties, especially in California. Some of them, even the most marginal ones, might feel that, look, I'm here with the Peace and Freedom Party, I'm here with the Libertarian Party, why wasn't I let in? That's not viewpoint neutral. I think it puts them in a constitutional and tenable position. Okay. And seeing that my time is up, unless Your Honors have any further questions, I'm finished. I want to say thank you for coming in today. Appreciate it. Thank you. You have about four minutes for rebuttal. Counsel? Just very quickly, I'd like to rebut two points. There are six political parties in the state of California. It would be a wonderful thing if all six of them showed up on VA campuses and each of them told our veterans how important it was that they registered to vote. That's not a flood. It's a very small number of visits compared to the overall visits to the campus. And this is during visiting hours. This is a building open to the public. The Hatch Act was not cited and doesn't apply here. Mr. Preminger is not a federal employee. The veterans are not federal employees. And ironically, the very decision that Mr. Mardigan cites says that once they're off the clock, a federal employee can engage in a partisan voter registration drive. And so that's not cited. There was no policy here. There was an ad hoc decision. And it was not binding on the VA, much like the situation in the Bella Lewitsky case. The second reason, coming back to Justice Graber's question, the reason that we were prejudiced at trial, there are essentially three. We were told that the issue of injury and damages was off the table and that the only issues for trial were whether or not there was a policy. And if we were to be cured by a remand. What's your next point? Yes. That's my answer. That would be cured by a remand. You need to have the district court. You said there were four errors. That's the first one. Okay. The second error at trial was that the judge had an in limine order during the pre-trial conference that he only wanted to hear about policy. And he specifically said on the record at trial that Ms. Gerten was there only to testify in defense of her liability on sanctions. And he would not consider her testimony on the merits in any respect. She had no policy information. She was not the policy witness. She is the only evidence of she's the only person that says that anyone introduced themselves as a Democrat. Mr. Preminger was not wearing a pin of any kind. And that is all there is. So in that way we were prejudiced because that wound up being relied upon by the court. And the third way that we were prejudiced was the limitation to Building 331. We were told in pre-trial that as to this policy issue, that was campus wide. And we didn't have discovery, but, you know, the court said it was campus wide. And if we proved that, there was no written policy. And we said it at SER 214. We said they've admitted there's no written policy. We sent them requests for admissions. They said no policy applies here other than the rule itself, which is not based on the Hatch Act and is not applicable. So the third reason that we were prejudiced is there's been a change in law since. I think there was four. I think this is the fourth. Yes, a change in law. The Federal Circuit went way beyond what we expected. They said that Lakewood requires not only viewpoint neutrality, but that Lakewood requires affirmative protections for viewpoint neutrality. They said not only viewpoint neutral, but they said there can be no content-based discrimination. And, finally, they restricted it to a demonstration, which is not canvassing. It's not leafletting. They required a disturbance. They said construe this in harmony with Paragraph 5 of the same section. And they said indecency. And in this circuit, indecency, whether you're talking about art grants or whether you're talking about the recent Arizona Life Coalition case, it requires that the detailed criteria be set out in advance, because that is viewpoint discrimination if you don't have fair notice to the people so that they can conform their behavior, leave the buttons at home, you know, know what the rules are, and, finally, you discriminate against the people who just innocently walk in and start doing something without asking permission. We ask for permission. And that's why, if you don't decide, for the two grounds we've argued, that we're entitled to summary judgment, you should remand. Finally, this is a – yes. The VA's mission is to provide medical and other social services to long-term residents and visitors. That's what they told the federal circuit. So we're talking here about social services. Integrating veterans into the life of the communities where they live is the highest form of honor that we can give them. And it's a responsibility of the VA to make sure that when somebody moves to accept federal benefits, they don't lose their right to vote. And thank you very much. Thank you. Thank both counsel for their arguments. It's a very interesting case. It's submitted for decision, and the Court will stand at recess.
judges: Hawkins, Graber, Selna